UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
**VINCENT IODICE**

                      **Plaintiff(s),**                        **COMPLAINT**

                      **-against-**                        **Index No:**  20-4217

                                                                                 **Jury Trial Demanded**

**ARCHCARE AT TERENCE CARDINAL COOKE
HEALTH CARE CENTER, 1199 SEIU UNITED
HEALTHCARE WORKERS EAST, and
JANICE ATKINS**

                      **Defendant(s).**
------------------------------------------------------------------X

**VINCENT IODICE** ("Plaintiff" or "Mr. Iodice") by and through his attorneys, **FLORESTAL LAW FIRM, PLLC**, as and for his Complaint against **ARCHCARE AT TERENCE CARDINAL COOKE HEALTH CARE CENTER**, ("Cardinal Cooke"), **1199 SEIU UNITED HEALTHCARE WORKERS EAST** ("1199" or "the Union") and **JANICE ATKINS** ("Ms. Atkins"), (Collectively "Defendants") respectfully alleges on knowledge as to himself and his actions, and on information and belief as to all other matters.

## INTRODUCTION

This action is brought against Defendants for race based discriminatory practices in terms, conditions and privileges of employment pursuant to 42 U.S.C. §1981, New York State Human Rights Law ("SHRL"), N.Y. Executive Law §296, *et seq*., and the New York City Human Rights Law ("CHRL") N.Y. City Admin. Code §§8-107, *et seq*.; conspiracy to deprive of equal privileges and immunities under the law due to race pursuant to 42 U.S.C. §1985; aiding and abetting discriminatory conduct pursuant to the SHRL and CHRL; breach of the duty of fair representation

1

against 1199, and violation of the Collective Bargaining Agreement ("CBA") against Cardinal Cooke; negligent supervision, hire and retention against Cardinal Cooke and 1199; and negligent infliction of emotional distress against all Defendants. In committing these violations Defendants have acted in bad faith, exercised gross misjudgment, displayed arbitrary and reckless indifference to Plaintiff's rights under the law.

## VENUE AND JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.

2. This Court has supplemental jurisdiction over the SHRL, CHRL, and other state law claims pursuant to 28 U.S.C. § 1367.

3. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, as the alleged unlawful acts occurred in New York County.

4. Prior to the commencement of this action all prior conditions precedent, if any, have been met.

## PARTIES

5. Mr. Iodice is a member of a protected class in that he is a male, of Caucasian descent and at all times relevant was a resident of the village of Bayville, state of New York.

6. At all pertinent times Defendant Cardinal Cooke was and still is a domestic not-for-profit corporation, duly organized and existing under and by virtue of the laws of the state of New York.

7. At all pertinent times Defendant 1199 was and still is a union duly organized and existing under and by virtue of the laws of the state of New York established to, *inter alia*,

represent the interests of healthcare workers against violations by management employers.

8. At all pertinent times Defendant Janice Atkins was employed by the Union as a Contract Administrator.

## FACTUAL ALLEGATIONS

9. In January 2012 Plaintiff began his career at Cardinal Cooke as an occupational therapist working with disabled patients assisting them to, *inter alia*, become more independent in their everyday life.

10. Plaintiff had an excellent employment record with Cardinal Cooke during his tenure, having received commendations for his work performance and acknowledged by his peers for his exceptional work product.

11. On October 3, 2019 Plaintiff ordered and helped design a special tomato stroller containing a positioning cushion for one of his patients who was African-American, severely disabled and non-verbal. Plaintiff was very proud of his work product and confident that it would assist the patient in becoming more independent and looked forward to observing the patient's reaction to the new stroller.

12. Indeed, Plaintiff chose this profession because he understands the plight of the disabled, as he too is disabled having suffered a tragic car accident in his youth that placed him in a severe coma for months and he had to relearn how to walk, talk and become independent. Plaintiff currently walks with a visible limp and has titanium in his body to support his limbs.

13. On October 4, 2019 Plaintiff observed the patient resting comfortably in the new stroller and thought that the patient looked adorable sitting in it and stated to himself "my little monkey look so comfortable."

14. Ms. Melanie Drax ("Ms. Drax") an African American nurse and Mr. Iodice's co-worker overheard Plaintiff's statement and responded sternly to him "what did you say?"

15. Mr. Iodice who clearly did not have any discriminatory intent by his statement replied "my little monkey looks so comfortable." Ms. Drax exclaimed to Mr. Iodice "you're so racial!" To which Mr. Iodice replied in shock "No, I meant it as a term of endearment."

16. Plaintiff did not give any further thought to his interaction with Ms. Drax, as he perceived that he had done nothing wrong. Later that day a physical therapist named Anita approached Mr. Iodice and stated to him that some of the Certified Nursing Assistants ("CNA's") were talking about his earlier statement to the disabled patient in front of Ms. Drax. Plaintiff presumed that Ms. Drax had shared that information with them, as she was the only one who heard him make the statement. Plaintiff was surprised to hear that his endearing statement was the center of so much attention and could not understand why.

17. On October 7, 2019 Ms. Lucybelle Agpawa ("Ms. Agpawa") Plaintiff's supervisory nurse entered his office and stated "Vincent you need to get a [union] delegate, and meet me in my office."

18. Plaintiff immediately secured a delegate to assist him and proceeded to Ms. Agpawa's office. When Mr. Iodice arrived at Ms. Agpawa's office, Ms. Alexander, a nurse practitioner, was also present, sitting at a table, and stated to Mr. Iodice "there has been a phone call to the compliance hotline made last Friday from a co-worker that said that you made racial slurs to a staff member and a patient."

19. Plaintiff was in complete shock at the allegation and immediately denied it as false and replied unequivocally "that's not what happened." The delegate handed Mr. Iodice a sheet of paper and instructed him to write down what happened during the incident.

20. Ms. Alexander halted Plaintiff from proceeding and instructed him to "stop, don't say anything. I don't want to hear anything. You need to go into the other room with the delegate and write down exactly what happened" and Plaintiff complied. *See* Exhibit 1.

21. Notwithstanding Plaintiff's written explanation, Ms. Agpawa immediately suspended Plaintiff pending an investigation by Cardinal Cooke. Ms. Agpawa further instructed Mr. Iodice to sign a Disciplinary Action Notice, which he refused, as it contained the false allegations against him. Cardinal Cooke failed to inform the Union of Plaintiff's suspension in accordance with Article XXIX of the CBA. *See* Exhibit 2.

22. On, or about October 11, 2019 Cardinal Cooke completed their investigation and entered into an agreement with Plaintiff allowing his one (1) week suspension as time served for any alleged offence and permitting him to return to work preconditioned on his writing apology letters to each of the CNA's that were allegedly present when he made his statement. *See* Exhibit 3.

23. Ms. Agpawa called Plaintiff at home with the good news and Plaintiff quickly agreed to Cardinal Cooke's terms. Although Plaintiff was certain that he had made the comment only to Ms. Drax, he did not want to quibble over minor inaccuracies and looked forward to putting this matter behind him. Ms Agpawa instructed Plaintiff to return back to work on Monday October 14, 2019 and report to Ms. Cumanda, an African-American nurse practitioner.

24. Plaintiff returned to work on October 14, 2019 and relayed Ms. Agpawa's instructions to Ms. Cumanda, to which she replied with hostility "I have nothing to say to you, just return back to your normal duties."

25. Later that day, Ms. Alexander instructed Plaintiff to write apology letters. pursuant to their agreement, to the three (3) CNA's who allegedly heard Plaintiff's statement and were offended by it: Ms. Drax, Ms. Erica Dixon, and Ms. Majinda Shahu. Ms. Shahu is white, the other two (2) are black.

26. Plaintiff wrote the letter as instructed and read it aloud to Ms. Shahu first, because she coincidentally happened to be the first CNA whom he came upon. *See* Exhibit 4. Ms. Shahu immediately accepted Plaintiff's apology and stated to him "I'm so happy you're back." Ms. Dixon rejected Plaintiff's letter of apology outright and Ms. Drax was not at work on that day.

27. Later that day, Ms. Alexander came back into Plaintiff's office and instructed him to meet with a delegate to rewrite the letter and this time to write each of the three (3) CNA's names on top of three (3) letters, as he did not do that before. Plaintiff met with delegate Sandra Ifill ("Ms. Ifill" or "delegate Ifill") an African-American nurse and did as he was instructed.

28. Plaintiff rewrote the letter and read it to delegate Ifill first. Ms. Ifill stated to Plaintiff "You need to take out the phrase words of 'endearment,' make it short, apologize for what you said begging for forgiveness." Plaintiff refused and stated to delegate Ifill that it was in fact feelings of "endearment" he had expressed to his patient and frequently used those same words with his own children at home.

29. Ms. Ifill responded menacingly "if you want to keep your job, then you have to change it." Plaintiff conceded under duress and took out the word "endearment." *See* Exhibit 5.

30. Plaintiff shared with delegate Ifill that he did not understand why Ms. Drax reacted the way she did, as his statement "my little monkey look so comfortable" was meant as a phrase

6

of endearment. Ms. Ifill responded angrily "you're so selfish only thinking about yourself."

31. Plaintiff re-read his apology letter to the two (2) CNA's that were present, as instructed, and once again Ms. Shahu accepted his apology and Ms. Dixon did not.

32. On October 17, 2019 at approximately 3:00PM a nurse came into Plaintiff's office and instructed him to once again get a delegate and report to the Senior Director of Human Resources' office immediately, Ms. Christene Nation-Jumpp ("Ms. Nation-Jumpp"). Plaintiff was confused at this instruction, but did as he was instructed and secured delegate Ifill to accompany him.

33. Mr. Iodice went to Ms. Nation-Jumpp's office with Ms. Ifill and met with Ms. Nation-Jumpp and Ms. Janice Atkins ("Ms. Atkins"). All of the women in the room were African-American. Ms. Nation-Jump began the meeting by stating that "The parents of the patient have heard what you said, and they are upset and want to sue Archcare Cardinal Cooke. I cannot have this here. You are a liability, and we came to a decision that we are going to terminate you."

34. Plaintiff was in complete shock, as he was made to believe that this whole incident was behind him, and he had already done what was required of him. Mr. Iodice responded quizzically "I don't understand, does that mean I'm fired?" To which Ms. Nation-Jumpp replied, "Yes, that means you're fired."

35. Plaintiff respectfully requested permission to speak and began to say "I was so thrilled with the positioning of my patient" and Ms. Atkins abruptly puts her hand across Mr. Iodice's face, touching his lips and shouts "Ms. Nation-Jumpp leave your office right now! Ms. Nation-Jumpp leave your office right now!" Ms. Nation-Jump hurries to exit her own office

and allowing Ms. Atkins to aggressively shout at Plaintiff by stating "What were you going say, my little nigger! My little monkey are terms of endearment! You should be ashamed of yourself! You took history in high school! You should be ashamed of yourself! You know the words nigger and monkey do not sit well with Black people!"

36. Mr. Iodice felt intimidated, threatened and humiliated as a white person at Ms. Atkins's racially toned outburst at him and replied "That's not what I said. You misunderstood." Delegate Ifill, instead of representing Plaintiff's interest during this process, proceeded to also verbally attack him along with Ms. Atkins by stating "You still do not understand! All you do is think of yourself! "He's selfish! He only thinks of himself!"

37. Ms. Nation-Jumpp eventually returned to her office, but allowed Ms. Atkins to continue her verbal assault on Plaintiff.  Indeed, Ms. Nation-Jumpp seemed to acquiesce with Ms. Atkins when Ms. Atkins threatened Mr. Iodice's livelihood by trying to force him to resign by stating "This can be reported to the ethics committee. You could lose your license. You can resign now, and work wherever you want to, with no issues, and you can go on with your life.  If you don't know now, you can call me tomorrow."  Plaintiff was perplexed at this new request to resign, as he thought that Ms. Nation-Jumpp had already terminated him.

38. On October 21, 2019 Ms. Atkins called Mr. Iodice to inquire about whether he had agreed to resign, to which he replied no and he wanted to grieve his case pursuant to the Union's CBA.  Ms. Atkins did not sound pleased with Plaintiff's decision.

39. Cardinal Cooke did not inform the Union of Plaintiff's termination in accordance with Article XXIX until October 29, 2019, twelve (12) days after the alleged termination in a letter containing various misrepresentations of fact.  *See* Exhibit 6.

40. On, or about, October 30, 2019 Plaintiff received a call from a co-worker who was a social worker at Cardinal Cooke who informed him that prior to his termination Ms. Drax was brazenly soliciting signatures on a petition that she was circulating to try to get him terminated. Management did not prevent Ms. Drax from circulating her petition.

41. Upon his termination, Plaintiff immediately applied for unemployment benefits, however Cardinal Cooke unjustifiably opposed Plaintiff's application for unemployment, alleging falsehoods such as claiming that Plaintiff referred to a child as a little monkey in front of staff and the **family of the child**. *See* Exhibit 7 (emphasis added).

42. The Administrative Law Judge rejected Cardinal Cooke's opposition and granted Plaintiff unemployment benefits. *See* Exhibit 8.

43. A few days before Plaintiff's November 18, 2019 3rd Step Grievance, Plaintiff met with Al Sherman a Union Supervisor and explained to him that Ms. Atkins had previously exhibited bias and aggression toward him because he was white and tried to force him to resign and thus, he did not feel comfortable with her representing his interest. Mr. Sherman understood Plaintiff's concerns and assured him that Julio Vives ("Mr. Vives") would be representing him at the forthcoming grievance hearing.

44. Plaintiff tried to call Mr. Vives on multiple occasions, but he did not return Plaintiff's call.

45. On November 18, 2019 Plaintiff arrived at the grievance hearing and encountered Ms. Atkins. Plaintiff inquired whether Mr. Vives was coming to represent him and Ms. Atkins replied with the same hostility towards him "It is not Julio's job to represent you, it is my job!" Ms. Atkins did not consult with Plaintiff or prepare him in any sort, prior to the Grievance's commencement.

46. On November 25, 2019 Ms. Nation-Jumpp sent a *pro forma* letter to Ms. Atkins acknowledging the November 18, 2019 grievance, incorporating falsehoods such as, *inter alia*, "the Union's remedy is that Mr. Iodice be reinstated with no back pay, sensitivity training, a change in unit, and a last chance agreement." *See* Exhibit 9. However, the Union, through Ms. Atkins, never suggested that Mr. Iodice be reinstated, but rather, Ms. Atkins tried to force him to resign or risk losing his license. Unsurprisingly, the letter stated that Cardinal Cooke would reject the Union's suggested remedy.

47. On December 5, 2019 Plaintiff sent an email to 1199's Executive Vice President Milly Silva explaining the bias and hostility he experienced from Ms. Atkins and requested that the Union assign him another representative to handle his appeal. *See* Exhibit 10.

48. Mr. Iodice tried to email Mr. Vives directly but Mr. Vives began to block his emails. *See* Exhibit 11.

49. On February 24, 2020 Mr. Iodice received a letter from Mr. Vives stating that the Union will represent him for his arbitration. At this juncture, Plaintiff is not interested in the Union representing him, as they have already displayed bias against him and a total disregard for his rights and thus, Plaintiff does not believe that the Union's representatives will represent him in a fair and unbiased manner.

50. During this process Mr. Iodice has experienced and continue to experience extreme emotional stress and mental anguish, which has affected his relations at home with his family. Plaintiff had to visit his doctor on multiple occasions and has been prescribed medication which he currently takes for his emotional stress.

## **AS AND FOR A FIRST CAUSE OF ACTION**

(Discrimination Pursuant to 42 U.S.C. §1981)

51. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

52. Defendants discriminated against Plaintiff by treating him differently and creating a hostile work environment due to his race in violation of the law; Defendants would not have treated Plaintiff as such if he were African-American, and there is no non-discriminatory basis for Plaintiff's treatment.

53. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A SECOND CAUSE OF ACTION

(Discrimination Pursuant to SHRL)

54. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

55. Defendants discriminated against Plaintiff by treating him differently and creating a hostile work environment due to his race in violation of the law; Defendants would not have treated Plaintiff as such if he were African-American, and there is no non-discriminatory basis for Plaintiff's treatment.

56. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A THIRD CAUSE OF ACTION

(Discrimination Pursuant to CHRL)

57. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

58. Defendants discriminated against Plaintiff by treating him differently and creating a hostile work environment due to his race in violation of the law; Defendants would not have treated Plaintiff as such if he were African-American, and there is no non-discriminatory basis for Plaintiff's treatment.

59. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A FOURTH CAUSE OF ACTION

(Conspiracy To Discriminate Pursuant to 42 U.S.C. §1985)

60. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

61. Defendants conspired to deny Plaintiff of privileges and immunities under the law due to his race.

62. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A FIFTH CAUSE OF ACTION

(Aiding and Abetting Under SHRL)

63. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

64. Defendants aided and abetted discrimination against Plaintiff because of his race.

65. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A SIXTH CAUSE OF ACTION

(Aiding and Abetting Under CHRL)

66. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

67. Defendants aided and abetted discrimination against Plaintiff because of his race.

68. Accordingly, Defendants are liable to Plaintiff for violations of his rights under the law.

## AS AND FOR A SIXTH CAUSE OF ACTION

(Breach of Duty of Fair Representation & Collective Bargaining Agreement)

69. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

70. The Union had a fiduciary duty to fairly represent Plaintiff's interest in the Grievance

process but failed to do so and were totally derelict of their duties which proximately caused Plaintiff harm.

71. Cardinal Cooke violated the CBA by terminating Plaintiff's employment without cause and discriminated against him.

72. Accordingly, 1199 and Cardinal Cooke are liable to Plaintiff for their respective breach and violation.

## AS AND FOR A SEVENTH CAUSE OF ACTION

(Negligent Supervision, Hire, and Retention)

73. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

74. The Union and Cardinal Cooke had a fiduciary duty to supervise and hire individuals that would not violate Plaintiff's rights but failed to do so and/or were totally derelict of their duties which proximately caused Plaintiff harm.

75. Accordingly, 1199 and Cardinal Cooke are liable to Plaintiff for their breach.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

76. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the Complaint with the same force and effect as if fully set forth herein at length.

77. The Union and Cardinal Cooke had a fiduciary duty to not cause Plaintiff emotional distress by fulfilling its legal obligations owed to Plaintiff, but failed to do so and/or were totally derelict of their duties which proximately caused Plaintiff harm.

78. Accordingly, 1199 and Cardinal Cooke are liable to Plaintiff for their breach.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

- Awarding compensatory and emotional damages to Plaintiff for the injuries they sustained in an amount to be determined by a jury, plus interest;

- Awarding punitive and exemplary damages in an amount to be determined by a jury;

- Awarding litigation costs and disbursements to Plaintiff, including but not limited to, reasonable attorney's fees in this action; and

- Such other and further relief as this Court may deem just and proper.

Dated: June 2, 2020
New York, NY

                FLORESTAL LAW FIRM, PLLC
                Attorneys for Plaintiff

                By:s/_____
                  Marcel Florestal, Esq.
                  48 Wall Street, Suite 11
                  New York, NY 10005
                  Tel: (212) 918-4416
                  Fax: (646) 417-7777
                  marcel@florestallaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VINCENT IODICE

                                    Plaintiff(s),                          **COMPLAINT**

                                     -against-                            Index No:  20-4217

                                                                            **VERIFICATION**

ARCHCARE AT TERENCE CARDINAL COOKE
HEALTH CARE CENTER, 1199 SEIU UNITED
HEALTHCARE WORKERS EAST, and
JANICE ATKINS

                                    Defendant(s).
-----------------------------------------------------------------X

I, **VINCENT IODICE**, being duly sworn under oath, do hereby verify that I am the Plaintiff in the above captioned action, I have read the allegations in the above Verified Complaint and I attest to the truth thereof.

                                                                                               VINCENT IODICE

Sworn to before me this
___ day of June 2020

_____
NOTARY PUBLIC

MARCEL FLORESTAL
Attorney & Counsellor At Law, State of New York
No. 02FL6132495
Qualified in New York County
Commission Expires November 19, 2021